IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BEACON SALES ACQUISITION, INC.,    )
as fiduciary of the BEACON SALES     )
HEALTH & WELFARE PLAN,         )
                                )
      v.                      )     Case No. 1:26-cv-436 (RDA/LRV)
                                )
JEANNE A. RODEK,            )
                                )
      Defendant.         )

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Plaintiff's Motion for a Temporary Restraining Order (the "Motion"). Dkt. 5. Considering the Motion together with the memorandum in support (Dkt. 6), associated declarations (Dkts. 6-1), the excerpted Plan documents (Dkt. 1-1), and oral argument at the February 25, 2026 hearing, the Court GRANTS Plaintiff's Motion and issues a temporary restraining order for the reasons that follow.

## I.     BACKGROUND

Plaintiff is Beacon Sales Acquisition, Inc., as fiduciary for Beacon Sales Health & Welfare Plan ("Plaintiff" or "Beacon Plan"). The Beacon Plan is administered in Herndon, Virginia. Dkt. 1 ¶ 6. Defendant Jeanne Rodek was a participant in the Beacon Plan. *Id.* ¶ 7.[1]

The Beacon Plan contains an express provision which provides that Beacon Plan participants and beneficiaries must fully reimburse the Beacon Plan from payments received from settlements or claims for injury or sickness caused by a third party. Dkt. 1 ¶ 8; Dkt. 1-1. Specifically, the Beacon Plan provides:

---

[1] This Court also appears to have personal jurisdiction over Defendant pursuant to *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436 (4th Cir. 2015).

> To the extent permitted by applicable law, the Plan will be subrogated, to the extent of benefits paid or payable by this Plan, to any monies (i.e., "first dollar" monies) paid or payable by any Other Plan or Person by reason of the injury or sickness which occasioned or would occasion the payment of benefits by this Plan, whether or not those monies are sufficient to make whole the Covered Person to whom or on whose behalf this Plan made its payments or to whom or on whose behalf this Plan's payments are payable.

Dkt. 1-1.

On or about August 30, 2023, Defendant sustained personal injuries as the result of an automobile accident. Dkt. 1 ¶ 9.  As a consequence of injuries sustained by Rodek in the aforementioned accident, the Beacon Plan paid medical benefits to various medical providers in the amount of $220,194.09. *Id.*

Rodek retained the law firm of Kimmel, Carter, Roman, Peltz & O'Neil, P.A. ("Kimmel Carter") to represent her for claims arising from the automobile accident.  *Id.* ¶ 10.  Through Kimmel Carter, Defendant filed a lawsuit in Superior Court of New Castle County Delaware (Case No. N25C-07-227) and obtained a settlement of $2,100,000. *Id.* ¶¶ 11-12.

Rodek, through counsel, was on notice of the Beacon Plan's right to reimbursement prior to the settlement of her claims. *Id.* ¶ 13.  Rodek has failed to reimburse the Beacon Plan from the proceeds of the settlement and has thereby breached the terms of the Plan and ERISA. *Id.* ¶ 14. Kimmel Carter has taken a portion of the settlement as payment for its fee and reimbursement of advanced costs. *Id.* ¶ 15.  Rodek has instructed Kimmel Carter to disburse the remaining settlement funds directly to her in disregard of the plan's equitable lien against the proceeds of the settlement. *Id*. ¶ 16.

Following discussions regarding Beacon Plan's lien on the settlement funds, Kimmel Carter's representative sent an email stating: "I just spoke with our client, and they have advised they will be disbursing all funds to the client, and you are welcome to sue their 75-year old client." Dkt. 6-1 at 11.

## II.    STANDARD OF REVIEW

Preliminary injunctions and temporary restraining orders are "extraordinary remed[ies] never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Such requests "involv[e] the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017).  To be eligible for a preliminary injunction or a temporary restraining order, Plaintiff must demonstrate each of the following factors by a "clear showing": (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and (4) the public interest favors equitable relief.  *Winter*, 555 U.S. at 20, 22.

## III.    ANALYSIS

A review of the factors set forth in *Winter* establishes that Plaintiff has satisfied its burden to obtain a temporary restraining order ("TRO") to maintain the status quo so that Defendant does not dissipate the identifiable settlement funds while this matter is proceeding.  Accordingly, the Court will grant the Motion.  The Court analyzes each of the necessary elements below.

### A.    Likelihood of Success on the Merits

As noted *supra*, Beacon Plan's right to reimbursement arises from the express and unambiguous terms of the Plan.  Dkt. 1-1.  Section 502(a)(3)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), specifically provides that a civil suit may be brought "to obtain other appropriate *equitable* relief (i) to redress such violations [of ERISA] or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3)(B).  The Supreme Court has authorized enforcement of such provisions under Section 502(a)(3) where the Plan administrator seeks to recover "specifically identifiable" funds that were

3

within the possession of a plan beneficiary. *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 369 (2006) (finding that the Plan "properly sought 'equitable relief' under § 502(a)(3)"). As the Supreme Court has further instructed an equitable lien "both arises from and serves to carry out a contract's provisions" and "enforcing the lien means holding the parties to their mutual promises." *U.S. Airways v. McCutchen*, 569 U.S. 88, 98 (2013). Under *Sereboff*, a plan creates an enforceable equitable lien by agreement when it identifies: (i) a particular fund distinct from the beneficiary's general assets; and (ii) a particular share of that fund to which the plan is entitled. 547 U.S. at 364. The Court agrees that the Beacon Plan satisfies both requirements. It identifies the settlement funds and identifies its share of those settlement funds by reason of its payment of medical benefits. Accordingly, Plaintiff has established a likelihood of success on the merits.

B.    Irreparable Harm

Key to the issue of irreparable harm is the Supreme Court's decision in *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016). In *Montanile*, the Supreme Court reversed a judgment in favor of a Plan administrator, because the Plan administrator was no longer enforcing an equitable lien where the identifiable settlement funds had been dissipated and the Plan was seeking to recover out of the beneficiary's general assets. 577 U.S. at 139. In so holding, the Supreme Court suggested that the Plan's relief "would have been equitable had it immediately sued to enforce the lien against the settlement fund then in [the beneficiary's] possession." *Id.* at 144. The Supreme Court further indicated that the Plan should have "taken various steps to preserve those funds." *Id.* at 151. Thus, the clear message from the Supreme Court in *Montanile* is that Plan administrators should take steps to sue quickly and to

immediately seek to preserve settlement funds, lest the settlement funds be dissipated and their right to equitable relief lost.

Here, it is clear that Plaintiff will suffer irreparable harm should the settlement funds be dissipated. As the Supreme Court held in *Montanile*, if the funds are dissipated, then Plaintiff no longer has a right to equitable relief under the Plan. Moreover, here, there risk of dissipation is not speculative. Defendant's counsel in the state litigation has refused to pay the Plan administrators or to hold the settlement funds while the dispute regarding the funds is resolved. Dkt. 1-1. Indeed, the representative for Defendant's counsel basically suggested it was going to disburse the funds and Plaintiff was "welcome" to sue to try to recover its funds. This suggests a non-speculative risk that the funds are being moved as a way to avoid Plaintiff's interest. Accordingly, this also weighs in favor of an injunction.

### C.    Balance of the Equities

Here, Plaintiff faces the risk of imminent and irreparable harm without the issuance of a TRO, because, under *Montanile*, if the settlement funds are dissipated, it loses any opportunity for recovery. This would, in effect, permanently deprive Plaintiff of the relief to which it has demonstrated it is entitled. By contrast, a limited TRO directed at the funds commensurate with the benefits paid out, would not deprive Rodek of the settlement proceeds or even the use of all settlement proceeds. And, if the Court ultimately decides that Plaintiff is not entitled to the settlement proceeds, the funds will be released.

### D.    Public Interest

"[O]ne of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans." *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998). Thus, this Court agrees that enforcing reimbursement provisions, like the one included in the Beacon Plan,

preserves plan assets for the benefit of all participants and beneficiaries. Moreover, the Beacon Plan is a self-funded plan. Dkt. 6-1. Thus, if it is unable to recover its payments, it may be unable to pay future claims. *See Admin. Comm. of Wal-Mart Stores, Inc. v. Shank*, 500 F.3d 834, 838 (8th Cir. 2007) ("Reimbursement and subrogation provisions are crucial to the financial viability of self-funded ERISA plans . . . ."). Thus, granting a TRO to preserve the settlement funds and Plaintiff's right to equitable relief is in the public interest.

### IV.    Security Bond

Courts "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, the Court will set a nominal bond of $5,000 to be kept by the Clerk of the Court in a non-interest bearing account.

### V.    CONCLUSION

In conclusion, each of the *Winter* factors weighs in favor of granting the TRO at issue here. Furthermore, the Court notes that such relief was contemplated in *Montanile* and that district courts often enforce such reimbursement provisions through injunctive relief. *See Diamond Crystal Brands, Inc. v. Wallace*, 563 F. Supp. 2d 1349, 1354 (N.D. Ga. 2008) (irreparable harm to ERISA plan fiduciary found because the funds at issue may no longer be traceable and under the control of defendants if injunction denied); *Mank ex rel. Hannaford Health Plan v. Green*, 297 F. Supp. 2d 297, 304 (D. Me. 2003) (irreparable harm found because ERISA plan's equitable right to settlement funds would be lost if injunction denied and funds dissipated). Accordingly, for the foregoing reasons, it is hereby ORDERED that the Motion for a TRO (Dkt. 5) is GRANTED; and it is

FURTHER ORDERED that Defendant, Jeanne A. Rodek is TEMPORARILY RESTRAINED from dispersing, disposing, or otherwise dissipating settlement proceeds held either by herself or in trust by the law firm of Kimmel, Carter, Roman, Peltz & O'Neil, P.A. so that less than $220,194.09 remain in trust until such time as the Court can hold a preliminary injunction hearing; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to serve a copy of this Order on Defendant and Kimmel, Carter, Roman, Peltz & O'Neil, P.A.; and it is

FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff post a bond of $5,000 with respect to the temporary restraining order granted herein to be taken in by the Clerk's office to go into a non-interest-bearing account; and it is

FURTHER ORDERED that this temporary restraining order shall remain in effect through March 25, 2026; and it is

FURTHER ORDERED that hearing scheduled for February 25, 2026 is CANCELLED; and it is

FURTHER ORDERED that a preliminary injunction hearing in this case is SET for 11:00 a.m. on March 25, 2026.

The Clerk is directed to forward a copy of this Order to Defendant and all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
February 20, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge

7